HOLBROOK, CABOT & ROLLINS CORP. v. PERKINS.

(Circuit Court of Appeals, First Circuit. July 27, 1906.)

No. 626.

1. NEGLIGENCE—DEFECTIVE PREMISES—PERSONS LIABLE—CORPORATIONS—ORGANIZATION.

Defendant contracted to construct a dam, canal, and power house for a traction company and then immediately organized a construction corporation without capital to which defendant sublet the contract, the construction company agreeing to furnish all the material, provide for the safety of employés and rent the machinery, apparatus, tools, and appliances from defendant at a nominal rental, and to receive as compensation the actual cost of the work and materials and one-half of 1 per cent. in addition. The officers of defendant and of the construction company were the same and one of defendant's officers testified that the construction company was organized for the sole purpose of avoiding attachments, etc. Held, in an action against defendant for injuries to a third person by the negligent placing of a derrick guy rope, that it was not error to charge that if the organization of the construction company and the subletting of the contract to the construction company were not in good faith, but fictitious to relieve defendant of the consequences of the careless prosecution of the work, defendant was responsible for plaintiff's injuries.

2. SAME—NOTICE OF DEFECTS.

Where defendant, after obtaining a construction contract, organized a corporation without capital to which the contract was sublet, the latter agreeing to furnish all the materials and perform the work, but such contract was not complied with, and defendants, in fact, purchased the materials, and caused them to be delivered on a siding under the control of its superintendent who was also the superintendent of the subcontracting corporation, defendant was liable for the latter's negligence in erecting a derrick guy rope over the siding, though the contract with the construction company was not fictitious.

In Error to the Circuit Court of the United States for the District of New Hampshire.

Oliver E. Branch (Oliver W. Branch, on the brief), for plaintiff in error.

Robert L. Manning (Burnham, Brown, Jones & Warren, on the brief), for defendant in error.

Before COLT and LOWELL, Circuit Judges, and BROWN, District Judge.

BROWN, District Judge. Arthur W. Perkins, a brakeman employed by the Boston & Maine Railroad Company, was swept from the top of a moving car by the guy rope of a derrick. The guy rope was stretched at a dangerous height across a private sidetrack used for the delivery of materials and machinery for the construction of a dam near Garvin's Falls, N. H. The Holbrook, Cabot & Rollins Corporation defended his action for negligence, on the ground that the plaintiff had sued the wrong party, and contended that the work and premises were controlled by the Atlantic Construction Company, a distinct corporation.

The defendant introduced in evidence what purported to be a construction contract between the copartnership of Holbrook, Cabot & Rollins on the one part, and the Atlantic Construction Company, incorporated under the laws of Maine, on the other part. The agreement recited that the firm had, by contract with the Manchester Traction, Light & Power Company, of Manchester, N. H., undertaken the construction of a dam, canal, power house, etc. It also recited that:

"The firm desires to engage the corporation to do the work and supply the materials called for by the said contract and the corporation desires to undertake the same upon terms hereof."

It was agreed that:

"The corporation shall, at its own proper cost and expense, well and truly furnish all labor and materials and do all things required to complete and perform the work called for in the contract. * * * And while engaged therein the corporation shall have the entire control, management and direction of the work and of the employés and persons engaged thereon and shall do whatever is necessary to guard properly the safety of such employés and all persons engaged in and about the premises and all others to whom the firm or corporation may owe such a duty, and the firm is hereby wholly discharged from all duties and liabilities in respect of the foregoing."

The firm was to furnish and lease to the corporation all machinery, apparatus, tools, and appliances necessary; the corporation to pay as a rental therefor the sum of $100 each month, and, upon the termination of the agreement, a further sum equal to the difference between the present value of said machinery, apparatus, tools, and appliances, and the market value. The corporation was to employ all workmen, laborers, and employés. As compensation for the execution of the work and the furnishing of said materials, the firm was to pay the corporation a sum equal to the actual cost of said work and materials, and one-half of one per cent. of such cost in addition.

The learned judge, in submitting the case to the jury, used the following language:

"I am going to submit to you this question: Whether this subletting or subcontracting was a substantial bona fide transaction in a reasonable prosecution of the work, or whether it was fictitious, and done for the purpose of avoiding the ordinary administration of justice and in bad faith. If you should find that this was merely a thing on paper, without any business, any practical business substance behind it aside from the fact of avoiding the legal consequences which would result from the ordinary administration of the laws of New Hampshire, then it is not a transaction that would relieve them from liability.

"In other words, if they were substantially—if the Atlantic Company were substantially the same party in interest, if substantially the same men and the same capital was behind it, and this subcontract, second contract, was drawn up between practically the same men, representing the same interests, for the sole purpose of avoiding the consequences which might result, the serious consequences which might result in the prosecution of the work, and to relieve them from legal liability, then it is a matter which you are not bound to regard, and especially it would be so if the same men were left in practical control and management of the enterprise.

"In other words, was this transaction fictitious for the purpose of relieving the original corporation who was behind the enterprise from the legal

consequences of a careless prosecution of the work? If it was, you are entitled—you are at liberty to disregard it entirely and to proceed to inquire into the question as to whether there was carelessness which caused the injury to the plaintiff.

"If you find that this is a matter of fiction under the views which I have suggested, then whatever was done in the name of the—if it was in the mere name of the Atlantic Company—whatever was done in the name of the Atlantic Company was really done by the Holbrook, Cabot & Rollins Corporation.

"On the other hand, if you should find it was a bona fide transaction simply for prudential business purposes, and so in good faith, and that this thing went out of the control in a substantial way. went out of the control of the Holbrook, Cabot & Rollins Corporation, and went into the hands of the Atlantic Corporation, then the suit is against the wrong party."

The plaintiff in error concedes that if there had been any evidence which rendered doubtful the execution of the contract, or the fact that the actual performance of the work was turned over to the Atlantic Construction Company, this question would have been for the jury.

We are of the opinion that there was very strong evidence tending to show that the so-called contract with the construction company was a mere pretense; that the parties thereto did not comply with, but, on the contrary, violated its terms; that there was no actual and bona fide contract; and that the execution of the document was a mere piece of circumvention, devised to avoid legal liability for accidents and the attachment of property in tort actions. The testimony of Mr. Rollins was commendably frank, and most explicit, to the effect that the Atlantic Construction Company was organized for the sole purpose of avoiding attachments, and that it was without capital. It had the same superintendent as the plaintiff in error, and was composed substantially of the same individuals who composed the firm of Holbrook, Cabot & Rollins, which firm subsequently was incorporated under the name of Holbrook, Cabot & Rollins Corporation.

The plaintiff in error cites many decisions to the effect that corporations are distinct entities, even when composed of the same individuals; that they may contract with each other, etc., and argues as follows:

"To allow an inquiry into the personnel of the two corporations in this case denies absolutely to Messrs. Holbrook. Cabot, Rollins, Patten and Story the right conferred upon them by the laws of Maine of making contracts, of suing and being sued, under the artificial form and name of the Atlantic Construction Company. It is hard to imagine a clearer case of contradicting a fiction so as to defeat the end for which it was invented. The sovereign acts of the Legislature of Maine in creating this corporation are to be nullified by a finding of the jury that the same men have formed two corporations, as they had a perfect right to do. There will be an end at once of all the rights, powers, privileges and limited liability of corporations, if it is open to an entire stranger to the corporation to contradict the fiction of law by virtue of which it exists, nullify the authority under and by which it is created, and assert that its acts are the acts of the individuals composing it, or, worse still, the acts of another corporation composed of the same men. * * * We submit that there is nothing illegal in attempting to carry on a business in such a way as to be free from legal liability for accidents happening in the course of that business. That is very often the sole object in view in forming a corporation rather than a partnership; yet who would contend for a minute that one injured by the serv-

ants of such corporation could come into court and hold the stockholders personally liable for the tort, because their sole object in forming the corporation was to escape personal liability for such accidents? * * *

"The uncontradicted testimony of Mr. Rollins was that the objects in forming the Atlantic Construction Company were (1) to avoid individual liability as partners; (2) to prevent the tying up of the firm's assets by attachments. The contract was, of course, the necessary means for attaining these objects, and they must have been the objects of the contract. Both these objects were perfectly legitimate," etc.

We are of the opinion that this argument is clearly unsound. Assuming the valid creation of the Atlantic Construction Company as a distinct corporation, assuming the regularity in point of form of the execution of a document which purported to be a contract between two corporations, there was still open the question whether there was in fact, as distinguished from mere form, a contract—whether there were in fact, as distinguished from form, two distinct parties making an agreement upon mutual considerations. When circumvention is resorted to by the use of legal documents, it is usual to comply strictly with legal forms, and to prepare documents that are technically unexceptionable; but the courts are not bound by mere forms, and look through forms to the substance.

In United States v. Milwaukee Refrigerator Transit Co. (C. C.) 142 Fed. 247, 255, it was said:

"If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons. This much may be expressed without approving the theory that the legal entity is a fiction, or a mere mental creation, or that the idea of invisibility or intangibility is a sophism. A corporation, as expressive of legal rights and powers, is no more fictitious or intangible than a man's right to his own home or his own liberty.

"Applying the rule here laid down to the circumstances shown to surround the brewing company and transit company, can it be doubted that there really is, in substance and effect, an identity of interest, or that the brewing company, considered as an association of individuals, really owns and fully controls the transit company? * * * Moreover, it clearly appears that the shipper practically controls the transit company, and I think this shows a sufficient identity of interest among the shareholders of both in these repayments to make them rebates, if paid and received with unlawful intent."

It is quite true that individuals are permitted to form corporations for the purpose of conducting business with a limited individual responsibility. It is not true that individuals are permitted to form corporations solely for the purpose of avoiding ordinary legal liabilities. Incorporation is permitted in furtherance of business enterprises; but a franchise is not granted for the sole purpose of destroying legal accountability. If the Holbrook, Cabot & Rollins Corporation had put out of its hands all of its property merely in order to avoid legal liability for torts which it might commit in the course of its operations, we think there can be no question that such a conveyance would be void. We see no substantial difference in the arrangement made in this case. Instead of putting its property out of

the hands of the Holbrook, Cabot & Rollins Corporation, the persons associated in that corporation attempted to put out of its hands the work authorized by its franchise, and for which the corporation was created, and thus, by an artificial division of its work and property, secure for the joint operations of the two corporations an immunity which could not be secured for the principal corporation. The immunity from attachment accruing to the Atlantic Construction Company is to be due to the fact that it will have no attachable assets. The immunity of the Holbrook, Cabot & Rollins Corporation is to be due to the fact that it will put all of its contracts into other hands. This arrangement between the Atlantic Construction Company and the Holbrook, Cabot & Rollins Corporation was merely a piece of circumvention which may be regarded either as a nullity, or as making the Atlantic Construction Company the agent, or alter ego, for whose acts the defendant, as true principal, is liable. James McNeil & Bro. Co. v. Crucible Steel Co. of America (Pa.) 56 Atl. 1067; West Chicago St. R. Co. v. Morrison, Adams & Allen Co. (Ill.) 43 N. E. 393, 396; Economic Fuel Gas Co. v. Myers, 168 Ill. 139, 48 N. E. 66.

Were it necessary to go beyond the evidence that the Atlantic Construction Company was created solely for the purpose of avoiding legal liability, and if there were any evidence tending to show bona fide reasons for the creation of the Atlantic Construction Company, even then we think the jury might well have found that there was no existing contract between the two corporations which was in fact treated or regarded as actually in force. By the terms of the contract the Atlantic Construction Company was to supply the materials. It clearly appears upon this record that it never did supply the materials, or go through the form of doing so; but, on the contrary, that all the materials were shipped in the name of the Holbrook, Cabot & Rollins Corporation, and were received by that company on the premises.

We find nothing in the instructions of the learned judge, above quoted, which was erroneous. The only doubt that arises is whether the instructions were not too favorable to the plaintiff in error, and whether the undisputed facts would not have justified an instruction that the Holbrook, Cabot & Rollins Corporation, and not the Atlantic Construction Company, was conducting the work.

A second question arises under alternative instructions of the learned judge. The jury were instructed that, even if the construction contract were a bona fide contract, the side track did not pass to the control of the Atlantic Construction Company under the language, the firm "hereby leases to the Corporation all machinery, apparatus, tools, and appliances necessary to be used in or about the said work." The evidence is clear that the Holbrook, Cabot & Rollins Corporation was receiving the materials over this track; that its superintendent was also the superintendent of the Atlantic Construction Company; and, therefore, that the defendant had the same knowledge of the negligent condition of the wire rope that the Atlantic Construction Company had. As it appeared in evidence that the materials were consigned to the Holbrook, Cabot & Rollins Corporation, that they were to be delivered over this track, that the superintendent of the

Holbrook, Cabot & Rollins Corporation knew of the dangerous obstruction, the Holbrook, Cabot & Rollins Corporation owed the duty to the railroad company and its servants to see that they were not exposed to this known and unnecessary risk.

We do not find it necessary to determine if the siding was comprehended within the term "appliances," used in the contract; for, as we have already said, there was a departure from the contract. The Holbrook, Cabot & Rollins Corporation assumed the delivery of materials, and used the siding and its adjuncts for this purpose. Even if, by the terms of the agreement, the Atlantic Construction Company was to have control of the siding, this is immaterial, in view of the fact that the parties did not observe the requirements of the contract. The Holbrook, Cabot & Rollins Corporation used the track for its own purposes, and its superintendent had knowledge of the dangerous obstruction to the free passage of cars. Under these circumstances we are of the opinion that the jury might well have found the defendant liable even if they found that the contract with the Atlantic Construction Company was real and not fictitious.

Other assignments of error do not, in our opinion, require specific notice. We are of the opinion that the merits of the case were with the defendant in error, and that, if there was any error or oversight it was harmless error, which did not affect the result.

The judgment of the Circuit Court is affirmed, and the defendant in error recovers costs in this court.