T. TOWLES & COMPANY *v*. MILES.*

(*Nashville.* December Term, 1914.)

**MASTER AND SERVANT. Injury to servant. Independent contractor.**

A firm, contracting to construct railroad work, organized a corporation to which a part of the work was subject. The partners and a third person were the stockholders of the corporation, and it was agreed that the third person could withdraw, and it was understood that the firm, on the completion of the subcontract, would buy from the corporation the contracting outfit for actual value thereof. The work sublet was done under the supervision of the firm. *Held,* that the corporation was not an independent contractor, and the firm was liable for injury to an employee.

Cases cited and approved: Nelson v. American Cement Co., 84 Kan., 797; James McNeil Co. v. Crucible Steel Co., 207 Pa., 493; Consol. Coal Co. v. Seniger, 179 Ill., 370.

Cases cited and distinguished: Central Coal & I. Co. v. Grider, 65 L. R. A., 455; Traction Co. v. O'Connor, 149 Ill. App., 598; Holbrook, etc., Corp. v. Perkins, 147 Fed., 166; McDonald, Shea & Co. v. Railroad, 93 Tenn., 281.

FROM WILLIAMSON.

Appeal from the Circuit Court of Williamson County to the Court of Civil Appeals and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—D. WIKLE, Judge.

*On the general question who are independent contractors, see notes in 65 L. R. A., 445 and 17 L. R. A. (N. S.), 371.

HENDERSON & HENDERSON and J. C. EGGLESTON, for plaintiff in error.

W. H. WASHINGTON, R. H. CROCKETT and W. W. FAW, for defendant in error.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is a suit for personal injuries by Miles against the firm of Towles & Co., which was engaged as principal contractor in the construction of a twenty-five mile section of the Lewisburg & Northern Railroad. Miles recovered a judgment in the court below, and this judgment has been affirmed by the court of civil appeals.

Miles claims to have been injured while in the employ of Towles & Co., and while engaged in erecting bents of a temporary trestle; and the defense made to his action is that he was in the employ of an independent contractor, Straley & Co., a body corporate under the laws of this State, which held a subcontract under the copartnership of Towles & Co.

It appears that Towles & Co., prior to such injuries, had entered into a written contract with a corporation, Straley & Co., subletting to the latter four miles of the section referred to.

The firm was composed of Towles, Hawley and Boxley, and the corporation was organized by them, each taking $2,000 of the $10,000 capital stock of Straley & Co. The remaining $4,000 was taken originally or

acquired by a personal friend of the partners, S. V. Straley, who was a nonresident of this State, and who, it seems, visited the work only two or three times. One of the members of the firm testified that Straley reserved the right to draw out of the corporation if he wanted to, and by a written contract between himself and the individuals composing the firm at the time he took stock it was stipulated that the latter should, on completion of the subcontract, buy from the company the contracting outfit, then about to be purchased by it, and pay for same the actual value thereof.

It is the contention of counsel for Miles that the contract by which the subsection of four miles was sublet to the corporation was a subterfuge; that the members of the firm were the moving spirits in the creation of the company, and incorporators, directors, and officers of Straley & Co., and caused members of their office force, a stenographer and a commissary keeper, to lend their names to make the requisite five incorporators; and that the affairs of the corporation were directed and controlled by the firm. Proof tending to this effect was developed before the jury.

A witness introduced by Towles & Co., and who, as a director and active employee of the corporation, was conversant with the details of the sublet work at and about the time of the injuries to Miles, testified on cross-examination:

"Q. Did Towles & Co. have anything to do with the work while you were out there?

131Tenn6

"A.    Yes, sir.

"Q.    What did they have to do with it?

"A.    Well, they directed the work.

"Q.    Towles & Co. then directed and controlled the work, did they not?

"A.    Yes, sir.

"Q.    What they said, then, went with their employees?

"A.    Yes, sir."

In our opinion there was in all this, material evidence to support the verdict of the jury, the rulings of the lower court, and the court of civil appeals to the effect that the corporation is not to be deemed an independent contractor.

The supreme court of Illinois had to deal with a not dissimilar situation, where a gas company had for its own purposes brought into existence a construction company, and said:

"We are of opinion, however, that the doctrine of 'independent contractor' does not apply to the present case. In the first place, the construction company was a mere means or mode adopted by the gas company for the construction of its system of gas pipes and gas works. The construction company was a mere instrument or tool used by the gas company for that purpose. The evidence tends fairly and clearly to show that the construction company was organized and acted simply as the agent or servant of the appellant company. An attempt is here made to evade liability by interposing a construction company as the

guilty party. The officers of the gas company were also officers of the construction company. The construction company and the gas company had their offices in the same building. . . . One Judson was the president of the gas company, and at the same time was consulting and supervising engineer of the construction company. One Yuille was paymaster of the construction company, and also an officer of the gas company. One Bryant was supervising the office and fixtures of the construction company in December, 1892, and was also secretary and treasurer of the gas company. All the officers and employees of the construction company, who testified in this case, were either at the same time connected in some way with the gas company, or passed alternately from the service of one to the service of the other. . . . The law is quite clear that a corporation cannot thus shift its responsibility upon another corporation which is its mere agent and tool." *Chicago Economic Fuel, etc., Co.* v. *Myers,* 168 Ill., 139, 48 N. E., 66.

Mr. Labatt, a recognized authority, in a note appended to *Central Coal & I. Co.* v. *Grider,* 65 L. R. A., 455, 507 (1904), referring to the above case, said:

"There is apparently no other instance of the application of such a doctrine. But its justice and reasonableness are so manifest, and it supplies such a simple and direct method of preventing the avoidance of liability by the subterfuge of creating 'dummy' corporations, that the present writer has no hesitation in

expressing the hope that it will meet with general acceptance.''

The same principle was applied in the later case of *Traction Company* v. *O'Connor*, 149 Ill. App., 598.

The *Myers Case* was further followed by the United States circuit court of appeals of the first circuit in *Holbrook, etc., Corp.* v. *Perkins*, 147 Fed., 166, 77 C. C. A., 462 (1906), in which it appeared that the defendant, Holbrook Corporation, on obtaining a construction contract, immediately organized another corporation to which it sublet the contract, and upon the facts disclosed the court held that the execution of this contract ''was a mere piece of circumvention, devised to avoid legal liability for accidents and the attachment of property in tort actions,'' and which might by the jury be regarded as making the manipulated entity the agent for whose acts the Holbrook Corporation was liable.

This court dealt in *McDonald, Shea & Co.* v. *Railroad*, 93 Tenn. (9 Pickle), 281, 24 S. W., 252 (1893), with an attempted manipulation of one corporation by another, and held them to be so far identical as that they were not to be deemed separate entities as related to the rights of third persons. In that case a construction company had originated and organized a railroad company and dictated and controlled its affairs. The evidence showed a lack of dealing at arm's length between the two entities. The claim of the construction company was that it stood in the relation of principal contractor to the railroad company; the effect

of which would be, on allowance, to defeat the lien claim of McDonald, Shea & Co., a firm of contractors which had done construction work under a contract with the construction company. The court, notwithstanding the last-noted fact, held that McDonald, Shea & Co. should be treated as the principal contractors of the railroad company, because of the inter-relationship of the construction company and the railroad company.

Other cases illustrating the principle are *Nelson* v. *American Cement Co.,* 84 Kan., 797, 115 Pac., 578; *James McNeil Co.* v. *Crucible Steel Co.,* 207 Pa., 493, 56 Atl., 1067; *Consol. Coal Co.* v. *Seniger,* 179 Ill., 370, 53 N. E., 733.

The ease with which a corporate charter may be procured, and the facility with which a corporate entity may be manipulated by its creators and made a shield for their protection should dispose a court to look through any such intended veil into the face of the individual or individuals behind.

In this case it is apparent that the firm was and was meant to be the prime controlling influence over the corporation. The corporation was lacking in that element of independence of action required to constitute it an independent contractor. Imposed on it, in respect of management and control, was the will of another entity, the firm. A corporation will be treated as a distinct legal entity, ordinarily, and until proof is adduced to the contrary. But that notion will not prevail when the result would be to give countenance and effect to a mere sham and work injustice.

The court of civil appeals properly affirmed the judgment of the lower court. On consideration of all errors assigned in support of the petition of Towles & Co., the writ of *certiorari* is denied.